**UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF PUERTO RICO**

In re                                                                      Case No. 11-06896(BKT)

JULIA EMILIA MARTINEZ RIVERA

       Debtor
                                                                                      Chapter 11


-----------------------------------------------------

**SMALL BUSINESS DISCLOSURE STATEMENT AND PLAN**

**I.- DISCLOSURE STATEMENT**

TO THE HONORABLE COURT.

    NOW COME DEBTORS through undersigned counsel, and respectfully state and pray:

    **I.- INTRODUCTION.**

    Debtor in this case is a medical doctor who works as a radiologist, therefore she does not keep patients medical records, she performs and/or interprets X-rays, MRI's, etc. She has operated in the Municipality of Morovis since 1988. At present she is also employed by the Department of Veteran Affairs, and she has a professional services contract with the San Lucas Hospital in Ponce.

    On August 16, 2011, above captioned debtor filed for protection under chapter 13 of the U.S. Bankruptcy Code, 11 USC 101 et seq. This case was converted to chapter 11 on December 17, 2012

    **II.- ASSETS:**

**A.- Real estate:**

    Debtors assets, as described in the schedules are the following:

1. Property-Calle Ruiz Belvis #1, Morovis, Debtor have 50% participation in this property. Debtor estimated market value of her participation in $86,000

2. Residential Apartment-Cond. Mirador, Ponce-Debtor have 50% participation in this property. Debtor estimated market value of her participation is $48,000

3. Commercial Building-Calle Ramón Flores, esq Calle Padial, Aibonito. Debtor estimates market value of her participation in $80,250.00 It has no liens attached.

4. Commercial Building at Calle Baldorioty, Morovis. Debtor estimated market value is $194,600.00

5. Land Lot-5.5 cdas Barrio Perchas, Morovis. Debtor estimated market value is $5,000.00

6. Land Lot-34 cdas, Barrio Franquez, Morovis. Debtor estimated market value of her 50% participation in $74,450.00

7. Land Lot –Calle Ruiz Belvis #2, Morovis. Debtor estimated 50% of her participation in $30,000.00

8. Land Lot-Calle Progresso #3, Morovis-Debtor estimated market value of her 50% participation in $30,000.00

9. Land Lot Calle Baldorioty corner to Calle Comericio, estimated market value $65,000 (previously under Centro Radiológico Morovis CSP

Mortgages affecting the properties:

| | |
|---|---|
| **Estimated total market value:** | **$ 613,300.00** |
| **Mortgages on Properties** | **$ 688,500.00** |
| **Estimated net value:** | **$ -0-** |

**B.- Personal property :**

1.- The personal property described in schedules "B" and its exhibits:

(3) Security deposits with public utilities in the amount of $450.00

(4) Furniture and appliances, artworks. Estimated value: $10,000.00 (exempt 522(d)(3))

(5) Professional Library. Estimated value: $1,000.00

(6) Clothing. Estimated value:$600.00 (exempt 522(d)(3))

(7) Jewelry. Estimated value: $6,000.00 (-1,350.00 exempt 522(d)(4)) $4,650.00

(9) Interest on Insurance Policy-Estimated Value:$3,300.00 (exempt)

(12) Retirement Plan. Estimated Value : $46,627.00 (exempt)

(16) Accounts Receivable from insurance plans. Estimated value $14,935.96 as of 2/28/2013 (-10,775.00 exempt 522(d)(8) $4,160.96

(80% of Gross Receivables of $18,669.96)

(25) Automobiles. Estimated value $7,360.00 (-3,225.00 exempt 522(d)(2)) $4,135.00

(28) Office equipment, furnishings, and supplies. Estimated value :$5,300.00 (-1,075.00 522(d)(5) $4,225.00

(29) Medical Equipment: Estimated Value: $7,500.00 (-2,025.00 exempt 522(d)(6)) $5,475.00

(35) Net Value of Medicoop Shares: $9,491.55 (subject to set-off)

Again, actual recoverable value of these assets, considering the current market conditions, and age of equipment is estimated to be much less

than the scheduled amount.

**Scheduled estimated value (less exemptions):** $18,976.

### III.- LIQUIDATION VALUE:

The liquidation value of debtors is the value of the net assets, less secured claims, less liquidation expenses, less applicable exemptions. The liquidation value of debtor is estimated at $1140,319.00, mainly from real properties and accounts receivables. See Table 2.

Continued operation of the debtor is estimated to produce more funds for creditors than liquidation.

### IV.- CLAIMS.

The claims to be paid under the plan are those filed, proved and allowed. Disputed (objected) claims will NOT BE PAID, unless, and until the Honorable Court determines them to be proved and allowed.

The following claims have been objected in this case:

Claims #10 and #11: Scotiabank de Puerto Rico

The claims filed, as of March 7,2013; for non governmental claims and governmental claims, appear in exhibit 1.- IRS claim has secured, priority, and unsecured portions.

**Class 1: allowed claims entitled to priority under sec. 507 (a)(2).**

Administrative expenses should be paid as incurred.

**Priority claims:**

Are claims in the aggregate amount of $26,478.34 to be paid during the 48 months following the plan effective date.

1.-Department of Treasury : $16,058.72

2. Internal Revenue Service: $5,456.26

3. Department of Labor: $3,278.00

4.- CRIM: $1,685.36

**Class 2.- Secured claims:**

1) Scotiabank de Puerto Rico to be paid up to the value of collateral of $345,600 in 30 years at 5.0% in equal monthly installments of $1,855.26. This claim is now objected, if allowed, it has been objected *in toto*.

2) CRIM in the amount of $4,507.23; for the commercial building at Baldorioty Street, Morovis, PR .

3) CRIM in the amount of $2,773.31, for residential property and land lot.

4) IRS in the amount of $129,619.90 for lien over personal and real property of debtor

5) Secretario de Hacienda in the amount of $1,951.38 for Special tax on real property

**Class 3.- Unsecured claims:**

The total amount of unsecured claims is as follows: **$517,812.65.**

See attached Table 3: List of unsecured claims.

The attached list represents ALL UNSECURED CLAIMS WHETHER FILED OR NOT, and, therefore proved and allowed. These claims will be paid in 60 months (Approximately 5% of their claims, under chapter 7, the unsecured creditors would receive nothing).

V.- LITIGATION:

**A.- At the U.S. Bankruptcy Court:** objection to claims of Scotiabank.

B.- At state court: cases are stayed under 11 USC 362. Case No. CCD 2010-0608(302): Scotiabank v. Julia Martínez et al., which was subject to the stay, and the stay was modified, has the following status: Scotiabank obtained a partial judgment (which was voided), and was requested that it be vacated, and has requested permission to re-start the case again (via a further amended complaint) (this was granted) because it failed to include as party defendant the United States of America, but has not notified the United States of America of the action pending, nor of the remedies requested at the Arecibo Section of the Court of First Instance (service to the United States of America is pending, as far as counsel for debtor knows).

**VI.- DEBTORS' CURRENT INCOME.**

Debtors current gross business income from her professional practice is $15,000.00

**VII.- OTHER MATTERS:**

Debtors will pursue a stipulation with Scotiabank de Puerto Rico to resolve the matters pending with this creditor: its claims and debtors' objections.

Date: April 24, 2013


**/s/Julia Amalia Martínez Rivera**
**Debtor**


**/s/Maximiliano Trujillo González**
**Attorney for debtor**

## PLAN OF REORGANIZATION UNDER CHAPTER 11:
### ARTICLE I

**SUMMARY**

This Plan of Reorganization (the Plan) under chapter 11 of the Bankruptcy Code (the Code) proposes to pay creditors of **DEBTOR** from its operations.

This Plan provides for two (2) classes of secured claims; one (1) class of unsecured claims; and one(1) class of priority claims. Unsecured creditors holding filed, proved, and allowed claims will receive distributions, which the proponent of this has valued at approximately .05 cents on the dollar. This Plan also provides for the payment of administrative and priority claims.

A disclosure statement herein before stated, that provides more detailed information regarding this Plan and the rights of creditors and equity security holders has been circulated with this Plan. **Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. (If you do not have an attorney, you may wish to consult one.)**

### ARTICLE II
**CLASSIFICATION OF CLAIMS AND INTERESTS**

1. <u>Class 1</u>. Priority Claims.
   All allowed claims entitled to priority under ' 507 of the Code, only IRS, (except administrative expense claims under ' 507(a)(2), and priority tax claims under section 507(a)(8)).

2. Class 2.  Secured Claims.
   Class 2A.- IRS
   Class 2A- Crim
   Class 2A.- PR Treasury Department
   Class 2B.- Scotiabank de Puerto Rico

3. Class 3.  All unsecured claims allowed under ' 502 of the Code..

### ARTICLE III
### TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, U.S. TRUSTEES FEES, AND PRIORITY TAX CLAIMS

 4 <u>Unclassified Claims</u>. Under section '1123(a)(1), administrative expense claims, ["gap" period claims in an involuntary case allowed under ' 502(f) of the Code,] and priority tax claims are not in classes.

 5 <u>Administrative Expense Claims</u>. Each holder of an administrative expense claim allowed under ' 503 of the Code will be paid in full under this Plan (as defined in Article VII), in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

 6 <u>Priority Tax Claims</u>. Each holder of a priority tax claim will be paid in full as described in this plan. Terms of treatment consistent with ' 1129(a)(9)(C) of the Code.

 7 <u>United States Trustee Fees</u>. All fees required to be paid by 28 U.S.C. '1930(a)(6) (U.S. Trustee Fees) will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Code. Any U.S. Trustee Fees owed on or before the effective date of this Plan will be paid on the effective date.

 8 <u>Commonwealth of Puerto Rico.</u> All fees, and penalties provided for in section 523(a)(7) (Puerto Rico Department of State – Corporations<u>, re: Centro Radiológico Morovis CSP).</u> Any applicable fees will be paid on the effective date.

**ARTICLE IV**
**TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN**

<u>Class 1 - Priority Claims</u>

 (a) <u>Impairment and Voting</u> Class 1 is impaired under the Plan. Each holder of an Allowed Priority Claim is entitled to vote to accept or reject the Plan.

 (b) <u>Distribution</u> Holders of Allowed Priority Claims shall receive in full satisfaction thereof an amount in Cash equal to the Allowed amount of such Claim on the Effective Date or when such Claim becomes allowed, or as otherwise may be agreed to by each such claimant and Debtors**.** They will receive 48 payments of $598.00 (including

4.0% interest, upon the later of 30 days from the Effective Date of this Plan, or the date on which such claim is allowed by a final unappealable order. See attached Schedule of Priority Claims, and Amortization Table of Priority Claims.

Class 2A - Secured Claims (Secretario de Hacienda and CRIM)

Includes Secretario de Hacienda and CRIM. These claims will be paid in monthly installments of $268, including principal and interest at 3%.

Class 2B- Secured Creditor (IRS)

Includes IRS secured claim of $129,619.90, to be paid in 72 monthly installments of $1,969.40

Class 2C- Secured Creditor-(Scotiabank)

Include mortgages payable to Scotiabank, as per claim 10 and 11, objected. Plan proposes to paid the secured portion of $345,600 in monthly installments of $1,855 at 5% per 30 years. The deficiency is included as unsecured claim. This constitutes a cramdown of this claim, modified to pay up to the value of the security.

(a) Impairment and Voting. Class 2A and 2B are impaired under the Plan. Scotiabank will be entitled to vote to accept or reject the Plan.

Class 3 - Unsecured creditors.

(a) Impairment and Voting Class 3 is impaired under the Plan and will be entitled to vote to accept or reject the Plan.

(b) Distribution : Unsecured creditors will received monthly installments *pro rata* of $200, for the first six months, $400; from month seven to twelve, in the first year. For year 2 thru 4 , will received $500 monthly and in the year 6 will received $600.00

monthly, in the aggregate, the amount of $28,800 in 60 months period., starting 30 days from the Effective Date of the Plan.

    D.    **Means of Implementing the Plan**

**MEANS FOR IMPLEMENTATION OF THE AMENDED PLAN**

    5.1    Except as otherwise provided in the Plan, Debtors will effect payment of all Administrative Expense Claims and Convenience Claims within 30 days of the Effective date, Priority Tax Claims and all Unsecured Claims, except as otherwise provided for in the Plan, will be paid with the continued operations of the medical practice.

    5.2    <u>Method of Distributions under the Plan</u>.

    (a)    <u>In General</u>. Subject to Bankruptcy Rule 9010, all distributions under the Plan to the Holders of Allowed Claims shall be mailed by first class mail, postage prepaid, to the address of each Holder as listed on the Master Address List of the Bankruptcy Case, as of the Distribution Record Date, unless Debtors have been notified in writing of a change of address, including, without limitation, by the filing of a proof of claim or notice of transfer of a Claim filed by a Holder of an Allowed Claim that provides an address for such Holder different from the address reflected on the Master Address List. Debtors shall have no obligation to locate such Holders of Allowed Claims whose distributions or notices are properly mailed but nevertheless returned.

    (b)    <u>Distribution to be on Business Day</u>. Any payment or distribution required to be made under the Amended Plan on a day other than a Business Day shall be made on the next succeeding Business Day.

    (c)    <u>Fractional Dollars</u>. Whenever any payment of a fraction of a dollar would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the

nearest whole dollar (rounding down in the case of less than $0.50, and rounding up in the case of more than $0.50).

(d) <u>Distribution to Holders as of the Distribution Record Date</u>. As of the close of business on the Distribution Record Date, the claims register shall be closed. Debtors shall have no obligation to recognize any transfer of any Claims occurring after the close of business on the Distribution Record Date, and shall instead be entitled to recognize and deal for all purposes under the Plan with only those Holders of record as of the close of business on the Distribution Record Date, unless otherwise provided for by order of the Bankruptcy Court.

5.3 <u>Objections to Disputed Claims</u>. Any objections to Claims against Debtors shall be prosecuted by Debtors, including any application to estimate or disallow Claims for voting purposes.

5.4 <u>Deadlines for Objecting to Disputed Claims</u>. Except as otherwise provided by order of the Bankruptcy Court with respect to any Claim, Debtors may file an objection to such Claim or otherwise dispute such Claim until the later of (i) the date that such Claim becomes due and payable in accordance with its terms, or (ii) thirty (30) days before the first date fixed by the Bankruptcy Court for the hearing on the confirmation of the Plan.

5.5 <u>Estimation of Claims</u>. Debtors may, at any time, request that the Bankruptcy Court estimate any Disputed Claim pursuant to Section 502(c) of the Bankruptcy Code, and the Bankruptcy Court shall have jurisdiction to estimate such Claim at any time, including, without limitation, during litigation concerning the Claim or an objection thereto. Debtors shall be entitled to request that the Bankruptcy Court

determine either the Allowed amount of such Claim or a maximum limitation in reference thereof. If the Bankruptcy Court determines the maximum limitation of such Claim, the determination shall not preclude Debtors from pursuing any additional proceedings to object to any ultimate payment of the Claim. If the Bankruptcy Court determines the Allowed amount of such Claim, the amount so determined shall be deemed the amount of the Disputed Claim for all purposes under this Plan. All those proceedings are cumulative and not exclusive remedies.

(b) <u>Investment of Cash</u>. Cash in the respective Disputed Claims Reserve may be invested by Debtors only in Cash Equivalents having maturities sufficient to enable Debtors to make all necessary payments to holders of Disputed Claims, in accordance to this Plan, if and when, such Disputed Claims become Allowed Claims. Any interest, income, distributions or accretions on account of such investment in Cash Equivalents shall be for Debtors' benefit and account, and the payment of any income taxes or other taxes arising therefrom shall be solely the responsibility of Debtors.

(c) <u>Distribution Upon Allowance of Disputed Claims</u>. The holder of a Disputed Claim that becomes an Allowed Claim subsequent to the Initial Distribution Date shall receive distributions of Cash from the Disputed Claims Reserve as soon as practical following the date on which such Disputed Claim becomes an Allowed Claim pursuant to a Final Order. Such distributions shall be made in accordance with the Plan based upon the distributions that would have been made to such holder under the Plan if the Disputed Claim had been an Allowed Claim on or prior to the Initial Distribution Date. No holder of a Disputed Claim shall have any claim against the Disputed Claims

Reserve until the Disputed Claim shall become an Allowed Claim, and no holder of a Disputed Claim shall have any right to interest on the Disputed Claim.

5.7     <u>Reversion of Unclaimed Checks and Disputed Claims Reserve</u>. The following amounts shall revert and be vested in Debtors, as to the claims to be paid under the Plan, free and clear of any claim or interest of any Holder of that Claim under the Plan: (i) the amount of any checks issued for distributions under the Plan that remain uncashed for a period of 90 days after the date of the distributions, and (ii) to the extent that a Disputed Claim is not Allowed or becomes an Allowed Claim in an amount less than the Disputed Claim Amount, the excess of the amount of Cash or Cash Equivalents in the Disputed Claims Reserve attributable to the Disputed Claim, over the amount of Cash actually distributed on account of such Disputed Claim.

    E.     **Risk Factors**

The proposed Plan has the following risks:

Accounts Receivable Collections can affect the cash flows for operations, but it is uncertain.

**ARTICLE V**
**<u>ALLOWANCE AND DISALLOWANCE OF CLAIMS</u>**

    8   <u>Disputed Claim</u>.  A disputed claim is a claim that has not been allowed or  disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been  filed or deemed filed, and the Debtor or another party in interest has filed an objection; or (ii) no  proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent,  or

    unliquidated.

9   <u>Delay of Distribution on a Disputed Claim</u>.  No distribution will be made on account of a disputed claim unless such claim is allowed [by a final non-appealable order].

10  <u>Settlement of Disputed Claims</u>.  The Debtor will have the power and authority to  settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

**ARTICLE VI**
**PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES**

13    <u>Assumed Executory Contracts and Unexpired Leases</u>.

The Debtor assumes the following executory contracts and/or unexpired leases effective upon the effective date of this Plan as provided in Article VII.

    1.    No executory contracts exist.

    (b)    The Debtor will be conclusively deemed to have rejected all executory contracts and/or unexpired leases not expressly assumed under section 6.01(a) above, or before the date of the order confirming this Plan, upon the effective date of this Plan provide for in Article VII, below.  A proof of a claim arising from the rejection of an executory contract or unexpired lease under this section must be filed no later than sixty (60) days after the date of the order confirming this Plan.

**ARTICLE VII**
**MEANS FOR IMPLEMENTATION OF THE PLAN**

Debtor will continue to operate his business, as usual.

Secured creditors shall continue to receive payments of $4,092.00 monthly until completely satisfaction of debts.

Unsecured creditors shall be paid 5% within sixty months after 30 days from the confirmation of the plan, the aggregate monthly payments to these creditors will be $431.00 per month for 60 months.

**ARTICLE VIII**
**GENERAL PROVISIONS**

11    <u>Definitions and Rules of Construction.</u>  The definitions and rules of construction set forth in ''101 and 102 of the Code shall apply when terms defined or construed in the Code are

used in this Plan, and they are supplemented by the following definitions:

    12    <u>Effective Date of Plan</u>. The effective date of this Plan is the eleventh business day following the date of the entry of the order of confirmation. But if a stay of the confirmation order is in effect on that date, the effective date will be the first business day after that date on which no stay of the confirmation order is in effect, provided that the confirmation order has not been vacated.

    1.    <u>Severability</u>. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

    4    <u>Binding Effect</u>. The rights and obligations of any entity named or referred to in this Plan will be binding and *res judicata* upon, and will inure to the benefit of the successors or assigns of such entity.

    5    <u>Captions</u>. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

    8.06 <u>Controlling Effect</u>. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the Commonwealth of Puerto Rico govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

**ARTICLE IX:**
**DISCHARGE OF DEBTOR**

<u>Discharge.</u> In accordance with sec. 1141 of the Code, the Debtor will receive discharge of debt in this bankruptcy case, upon substantial completion of the Plan, and the entry of the appropriate Order from the U.S Bankruptcy Court.

**ARTICLE X**
**OTHER PROVISIONS: CRAMDOWN**

If all applicable requirements of 11 USC 1129(a), other than subsection (a)(8) are met with respect to the plan, the Debtors hereby request that the Court confirm this Plan notwithstanding the requirements of said section. The plan complies (or, if needed will be modify to comply) with the cramdown requirements of section 1129(b); it does not discriminate unfairly and is fair and equitable with respect to each class of claims or interest that is impaired under and has not accepted the Plan.

Respectfully submitted.

In San Juan, Puerto Rico, this 24 Day of April, 2013.

/s/ Julia Amalia Martínez Rivera

Debtor

/s/MAXIMILIANO TRUJILLO-GONZALEZ
Attorney for debtors
USDC #122208
PMB 429
100 Grand Paseos Blvd Suite 112
San Juan PR 00926-5902
fax (787)200-5063
(787)438-8802
maxtruj@gmail.com

This Disclosure Statement, and the Plan, shall be distributed and served as soon as it is authorized by the U.S. Bankruptcy Court.

/s/MAXIMILIANO TRUJILLO-GONZALEZ